**No. 26-1269**

# United States Court of Appeals for the Ninth Circuit

EUFRONIO LOMIBAO, et al.
*Plaintiffs-Appellants*

v.

AGC BIOLOGICS, INC.
*Defendant- Appellee*

On Appeal from the United States District Court
for the Western District of Washington
Case No. 2:25-cv-00361-JHC
The Honorable John H. Chun

## BRIEF OF PLAINTIFFS-APPELLANTS

Michael A. Josephson
Andrew W. Dunlap
Julia M. Cline
JOSEPHSON DUNLAP LLP
5847 San Felipe St, Ste. 2400
Houston, Texas 77057
Tel: (713) 352-1100

Michael C. Subit
FRANK FREED SUBIT & THOMAS, LLP
705 Second Ave., Suite 1200
Seattle, Washington 98104
Tel: (206) 682-6711

Richard J. (Rex) Burch
BRUCKNER BURCH PLLC
5847 San Felipe St, Ste. 2400
Houston, Texas 77057
Tel: (713) 877-8788

Attorneys for Plaintiffs-Appellants

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii
INTRODUCTION ..... 1
JURISDICTIONAL STATEMENT ..... 2
ISSUES PRESENTED ..... 3
STATEMENT OF THE CASE ..... 3
A. Factual Background ..... 3
B. Procedural History ..... 4
SUMMARY OF ARGUMENT ..... 7
STANDARD OF REVIEW ..... 10
ARGUMENT ..... 11
1. FLSA Rights Cannot be Waived by Contract. ..... 11
A. The FLSA Prohibits Private Waiver of Rights. ..... 11
B. Precedent Confirms FLSA Rights Cannot be Waived (or "Released"). ..... 15
C. Guidance From the Department of Labor. ..... 19
D. The Limited Circumstances in Which Waiver Can Apply Are Not Present Here. ..... 20
E. Even if FLSA Claims Could be Settled Privately, They Must Involve a Bargained-For Exchange. ..... 25
2. Washington Public Policy Favors Employees, Not Employers. ..... 33
3. To the Extent the Court Determines Washington Law is Unclear, It Should Certify a Question to the Washington Supreme Court. ..... 36
4. Because Appellant Did Not Waive His Rights Under the FLSA or WMWA, His Class and Collective Claims Should be Reinstated. ..... 37
CONCLUSION ..... 38

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abrego v. Yu Lin, Corp.*,
317 F. Supp.3d 298 (D.D.C. 2018) .......... 26
*Alawar v. Trican Well Serv., L.P.*,
397 F. Supp. 3d 873 (W.D. Tex. 2019) .......... 18, 19
*Barnett v. City of San Jose*,
No. 18-CV-01383-JD, 2025 WL 354375 (N.D. Cal. Jan. 31, 2025) .......... 20
*Barrentine v. Arkansas-Best Freight Sys., Inc.*,
450 U.S. 728 (1981) .......... 8, 16, 17, 18
*Bodle v. TXL Mortg. Corp.*,
788 F.3d 159 (5th Cir. 2015) .......... Passim
*Bragdon v. Abbott*,
524 U.S. 624 (1998) .......... 12
*Broad v. Mannesmann Anlagenbau AG*,
196 F.3d 1075 (9th Cir. 1999) .......... 36, 37
*Brooklyn Sav. Bank v. O'Neil*,
324 U.S. 697 (1945) .......... Passim
*Cheeks v. Freeport Pancake House, Inc.*,
796 F.3d 199 (2d Cir. 2015) .......... 20
*Chery v. Tegria Holdings LLC*,
No. C23-612-MLP, 2024 WL 3730981 (W.D. Wash. July 31, 2024) .......... 18
*Collins v. Lobdell*,
188 F.3d 1124 (9th Cir. 1999) .......... 18
*D.A. Schulte, Inc. v. Gangi*,
328 U.S. 108 (1946) .......... 1, 12, 16
*Dent v. Cox Commc'ns Las Vegas, Inc.*,
502 F.3d 1141 (9th Cir. 2007) .......... 1, 14, 15, 17
*Drinkwitz v. Alliant Techsystems, Inc.*,
140 Wash. 2d 291 (2000) .......... 33, 34
*E.M.D. Sales, Inc. v. Carrera*,
604 U.S. 45 (2025) .......... 15
*Genesis Healthcare Corp. v. Symczyk*,
569 U.S. 66 (2013) .......... 1, 15
*Goldberg v. Cockrell*,
303 F.2d 811 (5th Cir. 1962) .......... 30
*Gordon v. City of Oakland*,
627 F.3d 1092 (9th Cir. 2010) .......... 17

*Hernandez v. Stringer*,
210 F. Supp. 3d 54 (D.D.C. 2016) .......... 28
*Hisle v. Todd Pac. Shipyards Corp.*,
151 Wash.2d 853 (2004) .......... 35
*Hohnke v. United States*,
69 Fed. Cl. 170 (2005) .......... 22
*Internat'l Ass'n of Fire Fighters, Local 46 v. City of Everett*,
146 Wash.2d 29 (2002) .......... 33
*Johnson v. Silver Shores MHP, LLC*,
20 Wash. App. 2d 1004 (2021) .......... 10, 35
*Kerzich v. Cnty. of Tuolumne*,
335 F. Supp. 3d 1179 (E.D. Cal. 2018) .......... 18
*Khadera v. ABM Indus. Inc.*,
No. C08-0417 RSM, 2012 WL 581402 (W.D. Wash. Feb. 21, 2012) .......... 34, 35
*Kraus v. PA Fit II, LLC*,
155 F. Supp. 3d 516 (E.D. Pa. 2016) .......... 13
*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024) .......... 20
*Lopez v. Nights of Cabiria, LLC*,
96 F. Supp.3d 170 (S.D.N.Y. 2015) .......... 18
*Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*,
679 F.2d 1350 (11th Cir. 1982) .......... 20, 25
*Martin v. PepsiAmericas, Inc.*,
No. 1:07CV91-SA-JAD, 2008 WL 4755394 (N.D. Miss. Oct. 28, 2008) .......... 19
*Martin v. Spring Break '83 Prods., L.L.C.*,
688 F.3d 247 (5th Cir. 2012) .......... 21, 22, 23, 27
*Martinez v. Back Bone Bullies Ltd*,
No. 21-CV-01245-MEH, 2022 WL 782782 (D. Colo. Mar. 15, 2022) .......... 26
*Martinez-Cuevas v. DeRuyter Bros. Dairy, Inc.*,
196 Wash. 2d 506, 475 P.3d 164 (2020) .......... 34
*Martino v. Michigan Window Cleaning Co.*,
327 U.S. 173 (1946) .......... 17
*McClain v. State*,
34 Wash. App. 2d 247 (2025) .......... 34
*McConnell v. Applied Performance Techs., Inc.*,
98 F. App'x 397 (6th Cir. 2004) .......... 20
*McKown v. Simon Prop. Grp. Inc.*,
689 F.3d 1086 (9th Cir. 2012) .......... 36
*McKown v. Simon Prop. Grp., Inc.*,
182 Wash. 2d 752, 344 P.3d 661 (2015) .......... 36

*McLinn v. F/V Fjord*,
744 F.2d 677 (9th Cir.1984) .......... 36
*Melendez v. Rockaway Maint. Partners Corp.*,
No. 22-CV-10679 (LJL), 2023 WL 8113382 (S.D.N.Y. Nov. 22, 2023) . 28, 29, 31, 33
*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
547 U.S. 71 (2006) .......... 12
*Montes v. Sparc Grp., LLC*,
136 F.4th 1168 (9th Cir. 2025) .......... 10, 36
*Montes v. Sparc Grp. LLC*,
586 P.3d 999 (2026) .......... 10, 36
*Nall v. Mal–Motels, Inc.*,
723 F.3d 1304 (11th Cir.2013) .......... 2
*Niland v. Delta Recyling Corp*,
2004 WL 2445519 (Jan. 23, 2004) .......... 15
*O'Connor v. United States*,
308 F.3d 1233 (Fed. Cir. 2002) .......... 8, 21, 22, 24
*O'Neal v. Am. Shaman Franchise Sys., Inc.*,
166 F.4th 1274 (11th Cir. 2026) .......... 1, 2
*Overnight Motor Transp. Co. v. Missel*,
316 U.S. 572 (1942) .......... 17
*Parth v. Pomona Valley Hosp. Med. Ctr.*,
630 F.3d 794 (9th Cir. 2010) .......... 17
*Pellino v. Brink's Inc.*,
164 Wash. App. 668 (2011) .......... 33
*Peninsula Sch. Dist. No. 401 v. Pub. Sch. Employees*,
130 Wash.2d 401 (1996) .......... 33
*Perez–Farias v. Global Horizons, Inc.*,
668 F.3d 588 (9th Cir.2011) .......... 36
*Porter v. Bd. of Trs. of Manhattan Beach Unified Sch. Dist.*,
307 F.3d 1064 (9th Cir.2002) .......... 12
*Rocha v. King Cnty.*,
195 Wash. 2d 412 (2020) .......... 34
*Schilling v. Radio Holdings, Inc.*,
136 Wn.2d 152, 961 P.2d 371 (1998) .......... 10, 33
*Selk v. Pioneers Mem'l Healthcare Dist.*,
159 F. Supp. 3d 1164 (S.D. Cal. 2016) .......... 25
*Seminiano v. Xyris Enter., Inc.*,
602 F. App'x 682 (9th Cir. 2015) .......... Passim
*Sifferman v. Sterling Fin. Corp.*,
No. C13-183 MJP, 2014 WL 28854 (W.D. Wash. Jan. 2, 2014) .......... 18

*Simmons v. G. Arnett*,
47 F.4th 927 (9th Cir. 2022) ....................2
*Socias v. Vornado Realty L.P.*,
297 F.R.D. 38 (E.D.N.Y. 2014) .................... 8, 9
*Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*,
330 F.3d 1110 (9th Cir. 2003) .................... 11
*Thompson v. Paul*,
547 F.3d 1055 (9th Cir.2008).................... 36
*Toner ex rel. Toner v. Lederle Lab'ys, Div. of Am. Cyanamid Co.*,
779 F.2d 1429 (9th Cir. 1986) .................... 36
*Tortomas v. Pall Corp.*,
No. 18CV5098JMASIL, 2020 WL 2933669 (E.D.N.Y. May 31, 2020).................... 29
*Trammell v. Aditi Consulting LLC*,
No. 2:25-CV-00243-RSL, 2025 WL 2917540 (W.D. Wash. Oct. 14, 2025) . 18, 26, 31
*United States v. Alvarez-Hernandez*,
478 F.3d 1060 (9th Cir. 2007) .................... 12
*United States v. Male Juvenile*,
280 F.3d 1008 (9th Cir.2002).................... 12
*Villatoro v. Kim Son Rest., L.P.*,
286 F. Supp. 2d 807 (S.D. Tex. 2003) ....................9
*Walling v. Helmerich & Payne, Inc.*,
323 U.S. 37 (1944) ....................16, 17
*Walton v. United Consumers Club, Inc.*,
786 F.2d 303 (7th Cir. 1986)....................20, 21
*Wirtz v. Milton J. Wershow Co.*,
416 F.2d 1071 (9th Cir. 1969) .................... 17
*Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*,
419 F.3d 925 (9th Cir.2005).................... 10
*Yoon v. Kaiser Found. Hosp.*,
412 F. App'x 930 (9th Cir. 2011) .................... 10
*Young Min Lee v. New Kang Suh Inc.*,
No. 17-CV-9502 (NSR), 2020 WL 5504309 (S.D.N.Y. Sept. 11, 2020)....................29, 30

**Federal Statutes**

28 U.S.C. § 1291 ....................2
28 U.S.C. § 1331 ....................2
28 U.S.C. § 1367 ....................2
29 U.S.C. § 202(a) .................... 16
29 U.S.C. § 216(b)....................2, 14
29 U.S.C. § 216(c) .................... 8, 11, 14, 15

29 U.S.C. § 253 ........ 12, 13, 14

**State Statutes**

RCW 46.49.090(1) ........ 34
RCW 49.46.005(1) ........ 34
RCW 49.46.090 ........ 34
RCW 49.46.090(1) ........ 10, 34
RCW 49.46.110 ........ 34, 35
RCW 49.46.130 ........ 34
Wash. Rev. Code § 2.60.020 ........ 36

**Rules**

FRCP 56(c) ........ 11
FRAP 32(a)(5) and (6) ........ 39
FRAP 32(f) ........ 39

**Other Authorities**

1949 U.S.C.C.A.N. 2241 ........ 14
Opinion Letter Fair Labor Standards Act (flsa),
1999 WL 33210910 ........ 20
Pub. L. No. 75-718 ........ 11
Pub. L. No. 80–49 ........ 12
Pub. L. No. 81-393, § 14, 63 Stat. 910, 910 ........ 14
S.Rep. No. 81-640 ........ 14

## INTRODUCTION

This a case of significant importance to working Americans. For 80 years, the overwhelming majority of courts have recognized the Fair Labor Standards Act (FLSA) "establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). That's no surprise. After all, "the Supreme Court … rejected plaintiffs' attempts to waive claims to liquidated damages under the FLSA in private settlements." *Dent v. Cox Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1145 (9th Cir. 2007) (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 116 (1946)). And it did so based on the "same policy considerations which forbid waiver of … overtime wages under the Act[.]" *Gangi*, 328 U.S. at 115 (employees did not waive or release FLSA claims by signing a "release under seal" and accepting payment despite a "bona fide dispute" over coverage).

Nonetheless, and despite Congressional and Department of Labor guidance, the lower court held unrepresented employees can waive their rights under the FLSA and state minimum wage laws even in the absence of an "active dispute" regarding the claimed compensation. According to the lower court, waiving rights under the minimum wage statutes is no different from a garden variety cause of action (a proposition that, respectfully, finds no support in the law). *See, e.g., O'Neal v. Am. Shaman Franchise Sys., Inc.*, 166 F.4th 1274, 1281 (11th Cir. 2026) (settlement of FLSA claims must satisfy both "contract law and the FLSA's separate requirements"); *Bodle v. TXL Mortg. Corp.*, 788 F.3d 159, 164–65 (5th Cir. 2015) (settlement of FLSA claims must

meet FLSA specific requirements because the "general rule establishes that FLSA claims (for unpaid overtime, in this case) cannot be waived"). If upheld, the lower court's ruling will undermine fair competition and permit employers to pay rates below the minimums required by law. By rendering the mandatory requirements of federal and state minimum wage laws subject to private agreement, the lower court's decision guts the protection from employer overreach promised by these statutes.

This Court should confirm that "an employer can't 'escape liability' under the FLSA by asking an employee to sign away her right to back wages after they've accrued." *O'Neal v. Am. Shaman Franchise Sys., Inc.*, 166 F.4th 1274, 1286 (11th Cir. 2026) (Rosenbaum, J., concurring). Instead, FLSA claims may not be settled without approval of either the Secretary of Labor or a district court. *See, e.g., Nall v. Mal–Motels, Inc.*, 723 F.3d 1304, 1306 (11th Cir.2013) (cited with approval in *Seminiano v. Xyris Enter., Inc.*, 602 F. App'x 682, 683 (9th Cir. 2015).

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction under 28 U.S.C. § 1331 because this action arose under the Fair Labor Standards Act (FLSA). 29 U.S.C. § 216(b). The District Court had supplemental jurisdiction over Lomibao's state law claims. 28 U.S.C. § 1367.

On February 5, 2026, the District Court granted AGC's motion for summary judgment and entered judgment. This Court has jurisdiction to review the grant of summary judgment and entry of judgment because they are final decisions. *See* 28 U.S.C. § 1291; *see also Simmons v. G. Arnett*, 47 F.4th 927, 932 (9th Cir. 2022).

## ISSUES PRESENTED

This case presents the following issues:

1. Did the district court err in determining Appellant waived his FLSA rights via private agreement even though precedent, statutory history, and consistent Department of Labor guidance confirm such rights may only be resolved with supervision by either a court or the Department of Labor?

2. Did the district court err in determining Appellant waived his rights under the Washington Minimum Wage Act (WMWA), Washington Industrial Welfare Act (WIWA), and Washington Rebate Act (WWRA) via a private agreement?

3. Did the district court err in dismissing Appellant's class and collective claims based on a private waiver of rights under the FLSA and WMWA?

## STATEMENT OF THE CASE

### A. Factual Background

AGC employed Plaintiff-Appellant Lomibao from approximately December 2022 to May 2024. ER-150. During this period, AGC failed to pay Lomibao as required by federal and state law. *See, infra*. In May 2024, AGC laid Lomibao off in a reduction-in-force (RIF). ER-105 at ¶¶ 3–4. In connection with the RIF, AGC offered employees selected for layoff a standard severance payment in consideration for signing a Separation Agreement and Release. ER-105–106 at ¶¶ 5–10.

Lomibao received his Separation Agreement via DocuSign on May 10, 2024. ER-106 at ¶ 11. The Separation Agreement purported to release AGC from all causes of

action, including claims for unpaid wages arising under state or federal law. ER-111 at ¶ 7. The form Separation Agreement further states Lomibao "represents and agrees" that he "has been fully paid for all hours worked[.]" *Id.* The Separation Agreement stated he would receive a lump sum payment of $7,140. ER-109 at ¶ 3(a). Lomibao executed the Separation Agreement on May 31, 2024. ER-106 at ¶ 11; ER-115.

At the time of execution, Lomibao did not have an active dispute with AGC regarding wages. ER-102 at ¶ 3. AGC did not indicate the Separation Agreement was negotiable, and Lomibao did not negotiate the severance payment or Separation Agreement prior to signing. ER-103 at ¶ 5. Lomibao understood the severance payment was non-negotiable and based on years of employment with AGC, rather than any individualized circumstances. *Id.* AGC paid Lomibao the $7,140 severance payment on June 14, 2024. ER-106 at ¶ 13.

**B. Procedural History**

On February 26, 2025, Lomibao sued AGC for violating the FLSA, WMWA, WIWA, and WWRA. He attacked three illegal pay policies employed by AGC: (1) a pre/post shift off the clock policy, under which it required its employees to attend meetings, record production notes, and review standard operating procedures off the clock and without pay; (2) a meal deduction policy, under which AGC required its employees to record that they took a 30-minute "meal period," regardless of whether they received one; and (3) a bonus policy, under which AGC paid its employees non-

discretionary bonuses and shift differentials which it excluded from their regular rates of pay for purposes of calculating overtime.

AGC answered on March 25, 2026. It denied Lomibao's claims and asserted numerous affirmative defenses, including waiver and release. On July 18, 2026, AGC moved for summary judgment on Lomibao's state and federal claims based on the Separation Agreement and Release. Additionally, AGC argued Lomibao lacked standing to pursue class claims.

Lomibao responded on August 8, 2026. He argued Supreme Court precedent, Ninth Circuit authority, and guidance from the Department of Labor ("DOL") all confirmed FLSA rights cannot be waived by contract. Alternatively, even if employees could alter their FLSA rights by private contract, Lomibao did not waive his rights by signing the Separation Agreement because the contract did not settle a bona fide dispute over wages. Rather, it was a "mere waiver" of Lomibao's rights under the FLSA and WMWA, where the severance money was solely related to the end of Lomibao's employment. Because there was no evidence the severance payment was negotiated to settle ACG's wage and hour liability, the Separation Agreement was not a valid contract to waive Lomibao's rights under the FLSA. Further, Lomibao argued the Separation Agreement was invalid because Washington state law does not permit employees to waive their rights under the WMWA. Finally, Lomibao argued that because he retained his rights under the FLSA and WMWA, he could bring claims on behalf of others.

On reply, AGC argued the Separation Agreement released Lomibao's WMWA claims because Washington law does not prohibit private settlement of wage claims. Further, it claimed there is a "trend" of courts against requiring court approval (or Department of Labor) of FLSA settlements and that Lomibao's Separation Agreement released his FLSA claims because a bona fide dispute existed when the Agreement was executed.

On February 5, 2026, the parties held a hearing. Later that day, the district court entered a 23-page order granting AGC's motion for summary judgment. ER-31–53. The court recognized the "Ninth Circuit has stated in one opinion that 'FLSA claims may not be settled without approval of either the Secretary of Labor or a district court.'" ER-42, n.15. (quoting *Seminiano v. Xyris Enter., Inc.*, 602 F. App'x 682, 683 (9th Cir. 2015)). But it found that because *Seminiano* involved a plaintiff's attempt to dismiss a lawsuit and was unpublished, the district court was not obligated to follow it. ER-43, n.15. Thus, the lower court believed no binding authority categorically prohibited contractual waiver of FLSA rights.

Turning to the validity of the waiver, the district court thought a "bona fide dispute" existed at the time the Separation Agreement because Lomibao was aware he performed work off the clock during his employment. ER-41. Further, the district court concluded AGC "denied" any claims by Lomibao because it presented a Separation Agreement stating "Employee verifies that … Employee has been paid in full and received all compensation and benefits Employee earned by virtue of employment with

Employer[.]" *Id.* Thus, because AGC had not "conceded the overtime wages were owed," the court held there were "disputed issues" regarding ACG's liability sufficient to establish a bona fide dispute. *Id.* The court also concluded neither DOL supervision nor court approval is required for an employee to waive his rights under the FLSA. ER-42–45.

Continuing to Lomibao's Washington state law claims, the district court admitted Washington courts have held "WMWA rights cannot be waived and are nonnegotiable." ER-47–48 (cleaned up). However, the lower court purported to distinguish those cases as arising in the context of a collective bargaining agreement. ER-48. Thus, it believed Washington courts' categorical prohibition on waiver did not "automatically apply" to waiver in the context of a private settlement of WMWA claims. *Id.* In other words, the district court believed that although Washington courts said WMWA's claims were "nonnegotiable," they actually meant "negotiable" in the context of a release and that any such waiver was not void under public policy. ER-48–51. Based on these findings, the court concluded Lomibao waived his WMWA claims by contract. ER-51–52. Moreover, the court concluded Lomibao's waiver of claims robbed him of standing to represent a class or collective. ER-52–53.

## SUMMARY OF ARGUMENT

The district court erred in granting AGC's motion for summary judgment because rights under the FLSA and WMWA cannot be waived by private agreement.

Supreme Court precedent is clear: FLSA rights "cannot be abridged by contract or otherwise waived." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981).[1] Precedent, statutory history, and consistent agency guidance all confirm the FLSA does not permit private waiver of FLSA rights. 29 U.S.C. § 216(c). The limited instances in which FLSA waivers have been found valid—for example, when the employee is represented by a union—are not present here. There is no evidence Lomibao was represented by anyone, nor that the severance agreement was anything other than a "mere waiver of his rights" under the FLSA. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945). In fact, Lomibao believed the severance agreement was "non-negotiable" and based solely on "the number of years a person is employed with the company." ER-103 at ¶ 5. Losing his right to unpaid wages in "exchange" for the same payment an employee without those claims would receive is precisely the type of "harmful effects of unequal bargaining power" the FLSA seeks to prevent. *O'Connor v. United States*, 308 F.3d 1233, 1243 (Fed. Cir. 2002). "Low wage employees, even when represented in the context of a pending lawsuit, often face extenuating economic and social circumstances and lack equal bargaining power; therefore, they are more susceptible to coercion or more likely to accept unreasonable, discounted settlement offers quickly." *Socias v. Vornado Realty L.P.*, 297 F.R.D. 38, 40 (E.D.N.Y. 2014). "In

---

[1] Although *Barrentine* involved an FLSA lawsuit following an unsuccessful grievance under a collective bargaining agreement, the Supreme Court cited cases rejecting the use of contractual agreements to avoid FLSA claims, including private settlement agreements. *Barrentine*, 450 U.S. at 740 (collecting cases).

recognition of this problem, the FLSA is distinct from all other employment statutes" in its prohibition of private settlements. *Id.* This prohibition is critical to ensuring compliance with the FLSA.[2] The district court's opinion misapplied the law, and the facts to the law, in finding otherwise.

Even assuming Lomibao could have waived his rights under the FLSA, any such waiver would be invalid because there is no evidence that it was made in settlement of a bona fide dispute. *Brooklyn Sav. Bank*, 324 U.S. at 697. The severance agreement does not refer to any ongoing dispute but instead refers to the severance payment in exchange for the end of Lomibao's employment. ER-109 at ¶¶ A–C. Further, there is no evidence AGC paid Lomibao additional compensation to settle his FLSA claims, or that he received any money he wouldn't have normally received as part of a severance agreement. In sum, nothing in the Severance Agreement or the parties' declarations suggests the severance payment was intended to resolve a bona fide dispute between the parties over FLSA liability. In the absence of such evidence, any purported waiver is invalid.

Likewise, the district court erred in finding Appellant waived his state law claims. The Washington Legislature "has evidenced a strong policy in favor of payment of

---

[2] One of the undersigned's cases involved a large restaurant chain that paid well "below minimum wage" and did not pay overtime at all. *Villatoro v. Kim Son Rest., L.P.*, 286 F. Supp. 2d 807, 808 (S.D. Tex. 2003). In response employee claims, the employer attempted "to obtain releases and settlement agreements from its current and former employees" for a tiny fraction of the unpaid wages. *Id.* The FLSA's prohibition on private settlements was instrumental in preventing employer overreach.

wages due employees by enacting a comprehensive scheme to ensure payment of wages." *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 157, 961 P.2d 371 (1998). To that end, the WMWA expressly prohibits contractual waiver of rights under the WMWA. RCW 49.46.090(1) ("**Any** agreement between such employee and the employer **allowing** the employee to receive less than what is due under this chapter shall be no defense to such action.") (emphasis added). The parties' severance agreement, which purports to waive *all* Appellant's state law claims, "contravenes the legislative intent demonstrated by the strongly protective measures of the MWA." *Johnson v. Silver Shores MHP, LLC*, 20 Wash. App. 2d 1004 (2021). As such, its provision waiving Appellant's rights under state law are void as a matter of public policy. *Id.* Further, to the extent the Court believes Washington state law is unclear as to whether rights may be waived via private agreement, the Court should certify a question to the Washington Supreme Court. *Montes v. Sparc Grp., LLC*, 136 F.4th 1168, 1171 (9th Cir. 2025), certified question answered, 586 P.3d 999 (2026).

Finally, the district court erred in dismissing Appellant's class and collective claims based on lack of standing. Because Appellant did not (and could not) waive his rights under the FLSA and/or Washington state law, he maintains his claims. Thus, he has standing to bring representative claims.

## STANDARD OF REVIEW

On appeal, a district court's ruling on summary judgment is reviewed *de novo*. *Yoon v. Kaiser Found. Hosp.*, 412 F. App'x 930, 931 (9th Cir. 2011) (citing *Yellow Cab Co.*

*of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 927 (9th Cir.2005). The appellate court's review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). *Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*, 330 F.3d 1110, 1131 (9th Cir. 2003).

## ARGUMENT

### 1. FLSA Rights Cannot be Waived by Contract.

#### A. The FLSA Prohibits Private Waiver of Rights.

The district court found there was "no binding authority that would hold, or even strongly imply, that waiver of FLSA rights via contract is categorically prohibited." ER-39. That finding contradicts long-standing precedent establishing "FLSA claims may not be settled without approval of either the Secretary of Labor or a district court." *Seminiano*, 602 F. App'x at 683; 29 U.S.C. § 216(c). Moreover, the FLSA's statutory history clearly confirms Congress's intent to preserve the prohibition on private waiver of FLSA claims, as instructed by the Supreme Court.[3]

The FLSA was enacted in 1938. *See* Fair Labor Standards Act of 1938, Pub. L. No. 75-718, 52 Stat. 1060 (1938). In 1945, the Supreme Court held the FLSA prohibited employees from waiving their rights to not only minimum wages and overtime pay, but

[3] Statutory history is an accepted tool in interpreting statutory texts. *See, e.g.*, Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 256 (2012) ("If the legislature amends or reenacts a provision other than by way of a consolidating statute or restyling project, a significant change in language is presumed to entail a change in meaning.").

liquidated damages. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707-09 (1945) (a signed release does not waive an employee's FLSA rights). Thus, the Supreme Court confirmed private settlements for less than the employer's statutory liability violate the FLSA. *Id.* The following year, the Court extended *Brooklyn Sav. Bank* by holding private settlement agreements are invalid even if they are entered into for purposes of settling a bona fide dispute as to FLSA coverage. *D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 114 (1946).

Under the rules of statutory construction, we presume that Congress acts 'with awareness of relevant judicial decisions.'" *United States v. Alvarez-Hernandez*, 478 F.3d 1060, 1065 (9th Cir. 2007) (quoting *United States v. Male Juvenile,* 280 F.3d 1008, 1016 (9th Cir.2002)). We also "presume that when Congress amends a statute, it is knowledgeable about judicial decisions interpreting the prior legislation," *Porter v. Bd. of Trs. of Manhattan Beach Unified Sch. Dist.,* 307 F.3d 1064, 1072 (9th Cir.2002), and "when 'judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its … judicial interpretations as well.'" *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 72 (2006) (quoting *Bragdon v. Abbott,* 524 U.S. 624, 645 (1998)). Here, the statutory history confirms Congress understood FLSA claims could not be waived or released by private agreement.

Following the Supreme Court's decisions in *Brooklyn Sav. Bank* and *Gangi*, Congress amended the FLSA via the Portal-to-Portal Act of 1947, Pub. L. No. 80–49, 61 Stat. 84. The Portal-to-Portal Act added 29 U.S.C. § 253 – entitled "Compromise

and waiver" — to the FLSA. ER-80–81. Section 253(a) provides: "Any cause of action under the Fair Labor Standards Act … **which accrued prior to May 14, 1947**, or any action (whether instituted prior to or on or after May 14, 1947) to enforce such a cause of action, may hereafter be compromised in whole or in part, **if** there exists a bona fide dispute as to the amount payable by the employer to his employee; **except** that no such action or cause of action may be so compromised to the extent that such compromise is based on an hourly wage rate less than the minimum required under such Act, or on a payment for overtime at a rate less than one and one-half times such minimum hourly wage rate." 29 U.S.C. § 253(a).

"By its very language, § 253(a) does not apply to actions which accrued after May 14, 1947." *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 526 (E.D. Pa. 2016). Thus, § 253(a) limits the FLSA claims subject to compromise to those "which accrued prior to May 14, 1947[.]" 29 U.S.C. § 253(a). The logical corollary is that the Portal-to-Portal Act disallowed "compromise" of claims arising *after* May 14, 1947. If Congress intended to permit private compromise of claims moving forward, then the limitation to claims "which accrued prior to May 14, 1947" would be superfluous. *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012) ("If possible, every word and provision is to be given effect … None should needlessly be given an interpretation that causes it … to have no consequence.").

Indeed, if compromise of FLSA claims were already permitted, there would be no reason to enact § 253 in the first place. Thus, the 1947 amendment reflected a broad

policy choice: going forward, Congress wanted to maintain the prohibition on employers and employees contracting around wage protections. This reading is further supported by the remainder of § 253(a), which states that even for claims arising before 1947, settlements are *still* prohibited if they are for amounts below the statutory minimum wage and overtime floor. 29 U.S.C. § 253(a).

Congress reinforced the policy against private waiver of FLSA claims two years later when it enacted § 216(c) of the FLSA, granting the Secretary of Labor the authority to "supervise the payment of the unpaid minimum wages or the unpaid overtime compensation" due under the Act. ER-81 (citing Fair Labor Standards Amendments of 1949, Pub. L. No. 81-393, § 14, 63 Stat. 910, 910 (codified at 29 U.S. § 216(c))). "Subsection 216(c) was added in 1949 to facilitate the voluntary resolution of claims for back wages, while still providing protection for workers through DOL supervision." *Dent v. Cox Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1145 (9th Cir. 2007).

Congress understood *Brooklyn Sav. Bank* and *Gangi*'s prohibitions on settlement of FLSA claims "led to a decline in voluntary restitution by employers" because an employer who agreed to pay back wages could later be held liable for damages and attorney's fees under § 216(b). *Id.* (citing S.Rep. No. 81-640 (1949), *as reprinted in* 1949 U.S.C.C.A.N. 2241, 2249). Thus, "Congress … sought to assure employers who pay back wages in full under the supervision of the Wage and Hour Division that they need not worry about the possibility of suits for liquidated damages and attorney's fees." *Id.* (cleaned up).

However, § 216(c) "plainly requires" **both** "that the employee agree to accept the amount tendered by the employer" **and** "the Secretary of Labor's supervision of the settlement[.]" *Id.* at 1146. But under the lower court's reading, only the employee's agreement to the amount tendered is required. Once again, the lower court's reading would render the statute's plain text—and the requirement of the Secretary of Labor's supervision—needless. In fact, if employee acceptance is all that is required to waive FLSA rights, then both § 216(c) and § 253 were completely superfluous. Respectfully, the far better reading is that Congress understood FLSA rights could not be waived in private settlement and preserved that default rule.

As recently as last year, the Supreme Court confirmed "some Fair Labor Standards Act rights are not waivable[.]" *E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45, 53 (2025). We know what those rights are: "The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). Thus, "courts will not approve a settlement in an FLSA case unless it is supervised by the Department of Labor under section 16(c) or sanctioned by judicial process as part of a settlement agreement in litigation." Amicus Brief of the Department of Labor in *Niland v. Delta Recyling Corp*, 2004 WL 2445519, at *16 (Jan. 23, 2004).

### B. Precedent Confirms FLSA Rights Cannot be Waived (or "Released").

The FLSA was enacted to protect individual workers from substandard wages and oppressive working hours, and to protect legitimate businesses from competitors

who would pay less than the law requires. *Barrentine*, 450 U.S. at 739; 29 U.S.C. § 202(a) ("Congressional finding and declaration of policy"). To ensure those goals are met, the Supreme Court has "frequently emphasized the nonwaivable nature of an individual employee's right … to overtime pay under the Act." *Id.* at 740–41 (1981). "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Id.* at 741.

The Supreme Court's repeated, categorical pronouncement is applied whenever the substantive right to overtime pay is at issue—regardless of whether the waiver is prospective or retrospective:

*Brooklyn Savings Bank*, 324 U.S. at 707 (prohibiting private settlement of claims for liquidated damages because "the same policy considerations which forbid waiver of … overtime wages under the Act also prohibit waiver of the employee's right to liquidated damages" and noting "[n]o one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act").

*Gangi*, 328 U.S. at 114–116 ("release signed under seal" did not waive right to liquidated damages despite "bona fide dispute" regarding coverage under the FLSA).

*Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 42 (1944) (contract setting "artificial regular rate" was invalid even though it exceeded the minimum wage)

*Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 577 (1942) ("private contracts" cannot alter the FLSA's overtime requirements)

*Martino v. Michigan Window Cleaning Co.*, 327 U.S. 173, 177–178 (1946) (FLSA rights control over conflicting provisions in a collectively bargaining agreement).

*Barrentine*, 450 U.S. at 740–41 (collecting these cases and others). The underlying rule is clear: "**Any** … **contract** falling short of [the FLSA's requirements] **cannot be utilized to deprive employees of their statutory rights**." *Id.* at 41.

It's no surprise then that a majority of courts—including those in the Ninth Circuit—hold employees may not waive their FLSA rights via private agreement. *See, e.g., Dent,* 502 F.3d at 1145 ("the Supreme Court … rejected plaintiffs' attempts to waive claims to liquidated damages under the FLSA in private settlements"); *Gordon v. City of Oakland*, 627 F.3d 1092, 1095 (9th Cir. 2010) ("employees cannot waive the protections of the FLSA") (citing *Brooklyn Sav. Bank,* 324 U.S. at 707); *Parth v. Pomona Valley Hosp. Med. Ctr.*, 630 F.3d 794, 802 n. 2 (9th Cir. 2010) ("an employee may not waive his or her rights under the FLSA"); *Wirtz v. Milton J. Wershow Co.*, 416 F.2d 1071, 1073 (9th Cir. 1969) ("It must be remembered that restraining [an employer] from withholding the minimum wages and overtime compensation is meant to vindicate a public, rather than a private, right, and that the withholding of the money due is considered a 'continuing public offense.'"). "Where employers and employees reach an agreement that expressly violates the FLSA … employees may still bring actions to protect rights

provided for in the FLSA[.]" *Collins v. Lobdell*, 188 F.3d 1124, 1127–28 (9th Cir. 1999) (citing *Barrentine*, 450 U.S. at 740).

District courts agree. *See, e.g.*, *Kerzich v. Cnty. of Tuolumne*, 335 F. Supp. 3d 1179, 1183 (E.D. Cal. 2018) ("Because an employee cannot waive claims under the FLSA, they may not be settled without supervision of either the Secretary of Labor or a district court.") (citing *Barrentine*, 450 U.S. at 740); *Chery v. Tegria Holdings LLC*, No. C23-612-MLP, 2024 WL 3730981, at *2 (W.D. Wash. July 31, 2024) ("An employee's claims under the FLSA are 'nonwaivable.'"); *Sifferman v. Sterling Fin. Corp.*, No. C13-183 MJP, 2014 WL 28854, at *2 (W.D. Wash. Jan. 2, 2014) ("FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate."). The "strict limits on an employee's ability to waive claims" under the FLSA are in place "for fear that employers may coerce employees into settlement and waiver." *Trammell v. Aditi Consulting LLC*, No. 2:25-CV-00243-RSL, 2025 WL 2917540, at *2 (W.D. Wash. Oct. 14, 2025) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp.3d 170, 175 (S.D.N.Y. 2015)).

Other courts have refused to uphold purported waivers appearing in severance agreements. For example, in *Alawar v. Trican Well Serv., L.P.*, 397 F. Supp. 3d 873 (W.D. Tex. 2019), workers sued their former employer under the FLSA. The employer moved for summary judgment, arguing the employees waived their claims by signing Separation and Release Agreements in exchange for a severance payment. *Id.* at 883.

The court disagreed, noting the general rule that "even when there is a *bona fide* dispute as to whether certain employees are covered by the FLSA, and when that dispute has been settled in favor of paying the employees FLSA required wages, the employees' right to recover liquidated damages **cannot be waived**." *Id.* (quoting *Bodle v. TXL Mortg. Corp.*, 788 F.3d 159, 163 (5th Cir. 2015)). The court discounted the agreement's "acknowledgment" that the signatory employees had been paid for all wages and overtime due and that they had been paid for all hours worked, concluding "such waivers **are not permissible**." *Id.* at 884.

The employer in *Martin v. PepsiAmericas, Inc.*, No. 1:07CV91-SA-JAD, 2008 WL 4755394 (N.D. Miss. Oct. 28, 2008) lost summary judgment on the same issue. In *Martin*, the plaintiff signed an agreement stating she would not bring any claims against her employer in exchange for severance pay. *Id.* at *1. Four months later, she sued her former employer under the FLSA and the employer moved for summary judgment on waiver. *Id.* The court quickly disposed of the employer's argument, finding "the parties did not specifically contemplate the overtime wages. Even so, in the case *sub judice*, the Plaintiff cannot waive her right to FLSA overtime claims, and therefore, the Defendant's motion for summary judgment is denied." *Id.* at *3.

### C. Guidance From the Department of Labor.

On top of the statutory and judicial prohibitions on waiver, the Department of Labor agrees that "FLSA rights cannot be waived or compromised by private agreement and that, accordingly, an employee can only enter a settlement agreement that

terminates her FLSA claim with prejudice if it is supervised by the Department or approved by a court."[4] ER-71. Its stance is unequivocal: "There are no provisions in the FLSA that would allow employees to waive their rights to compensation in accordance with its provisions." Opinion Letter Fair Labor Standards Act (flsa), 1999 WL 33210910, at *1.

**D. The Limited Circumstances Permitting Waiver Are Not Present Here.**

The FLSA is intended to protect workers "from substandard wages and excessive hours" due to the unequal bargaining power between employer and employee. *Brooklyn Sav. Bank*, 324 U.S. at 706. Following the Supreme Court's guidance, most Courts of Appeal have noted FLSA settlements required either court approval or DOL supervision to be valid. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015); *McConnell v. Applied Performance Techs., Inc.*, 98 F. App'x 397 (6th Cir. 2004); *Walton v. United Consumers Club, Inc.*, 786 F.2d 303 (7th Cir. 1986); *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1353 (11th Cir. 1982). As Judge Easterbrook explained, because the FLSA "makes it impossible to agree on the amount of pay, it is **necessary to ban private settlements**

[4] Although not binding, the Department's extensive guidance evinces "thoroughness ... in its consideration" and is "consisten[t] with earlier and later pronouncements," both of which are "factors which give [the guidance] power to persuade." *Barnett v. City of San Jose*, No. 18-CV-01383-JD, 2025 WL 354375, at *11 (N.D. Cal. Jan. 31, 2025) (quoting *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 388 (2024)).

of disputes about pay. Otherwise the parties' ability to settle disputes would allow them to establish sub-minimum wages." *Walton*, 786 F.2d at 306 (emphasis added).

Although a minority of courts do not require DOL or court supervision for valid settlement of an FLSA claim, they still require *some* level of protection over employees' wage rights. Compare this case with *O'Connor v. United States*, 308 F.3d 1233 (Fed. Cir. 2002), and *Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247 (5th Cir. 2012). In *O'Connor*, a group of union-represented employees sued their employer for violating the FLSA. 308 F.3d at 1236. The employees were subject to a CBA executed between their employer and the American Federation of Government Employees ("AFGE"). *Id.* The CBA provided for grievance procedures designated as "the exclusive procedure available to bargaining unit employee(s) for the resolution of grievances" and mandated binding arbitration if the local bargaining unit representative was not satisfied with the results. *Id.* at 1237.

When the employees brought their lawsuit, the Court of Federal Claims dismissed the complaint and granted summary judgment in the employer's favor, finding their claims were barred by a previous settlement between the employer and their local bargaining unit. *Id.* at 1239. On appeal, the employees argued accord and satisfaction did not bar their FLSA claims under *Brooklyn Savings* because neither the Department of Labor nor a court supervised the settlement. *Id.* at 1240. The Federal Circuit Court of Appeals rejected that argument, holding *Brooklyn Savings* did not preclude a settlement where the employees were represented exclusively by a union and

subject to a CBA. *Id.* at 1242. Unlike private sector employees who are subject to unequal bargaining power, employees who are protected by a labor union are not at risk of the same inequities resulting from settlement. *Id.* at 1243-44. Because the workers were protected (and exclusively represented) by the union, the Court concluded Department of Labor and/or court supervision was not necessary for an accord and satisfaction. *Id.* at 1244.

The Court of Federal Claims later confirmed *O'Connor* is limited to its facts. *See Hohnke v. United States*, 69 Fed. Cl. 170, 180 (2005). *Hohnke* emphasized the "distinguishing factor" was that the *O'Connor* plaintiffs had "the benefits of the CSRA—a union representative, a CBA, and specific statutory grievance procedures—to protect their rights." *Id.* (citing *O'Connor*, 308 F.3d at 1241-1243). It refused to extend *O'Connor* to an employee represented by an attorney (but not a union), because the "moving force" behind FLSA jurisprudence "is not simply that settlements must be knowing and intelligent" but "a recognition of the unequal bargaining power between individual employees and their employers." *Id.* The mere presence of counsel does not redress that imbalance—otherwise "the history of unionism in the United States would have been quite different." *Id.*

*Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247 (5th Cir. 2012) likewise involved union-represented employees who "filed a grievance" pursuant to their CBA "alleging that they had not been paid for all hours worked." 688 F.3d at 249. A union representative investigated, ultimately concluding "it would be impossible" to calculate

whether anything, or how much, was owed. *Id.* Thereafter, the union and the employer entered into a settlement agreement pertaining to the disputed hours worked by the employees. *Id.* At the same time, a group of employees sued the employer. *Id.* at 250. While represented by independent counsel (as well as the union), these same workers "received and accepted full payment for their FLSA claims under the Settlement Agreement" between the employer and the union. *Id.* at 254. The district court granted summary judgment in favor of the employer, and employees appealed, arguing the settlement did not bar their claims. *Id.*

The Fifth Circuit affirmed, finding the employees' claims were barred by accord and satisfaction. *Id.* at 254. Because their union had "full power and authority" to settle on behalf of the employees and the union served as the "exclusive representative of the employees in the bargaining unit," the appellants could not initiate a lawsuit for their settled claims. *Id.* The Court concluded that the prohibition against waiver of FLSA rights was not implicated by the settlement because the appellants' union did not waive their FLSA claims. *Id.* at 257. Instead, appellants, while represented by counsel, personally received and accepted compensation for the disputed hours. *Id.* Thus, their rights were not "bargained away," but validated through a settlement of a bona fide dispute with the assistance of counsel and union representation. *Id.* And as the Fifth Circuit itself later explained, "the absence of any mention or factual development of any claim of unpaid overtime compensation in … settlement negotiations precludes a finding that the release resulted from a bona fide dispute under *Martin*." *Bodle v. TXL*

*Mortg. Corp.*, 788 F.3d 159, 165 (5th Cir. 2015). In the absence of such evidence, the "general prohibition against FLSA waivers applies … and [a] settlement release cannot be enforced against the plaintiffs' FLSA claims." *Id.*

The protections available in *O'Connor* and *Spring Break '83* are conspicuously absent here. Unlike in those cases, Lomibao did not have the benefit of private counsel or a collective bargaining unit to protect his statutory rights. His severance agreement was not entered into as part of litigation or a dispute over hours worked. Rather, it was executed "[i]n connection with his separation" of employment with AGC. ER-105 at ¶ 5. Although he had expressed issues with AGC in public forums, he did not complain regarding payment of wages and no one at AGC contacted him about any complaints. ER-102 at ¶ 3. Further, Lomibao believed his severance payment was based on his years of service rather than compensation for back wages owed. ER-103 at ¶ 5.. He understood the severance payment to be non-negotiable and unrelated to any individual claims he could assert against ACG. *Id.* Nonetheless, the district court's holding found that Lomibao's waiver was permissible, effectively stripping him of his right to tens of thousands of dollars in back wages and overtime. ER-39–40. This is the exact kind of "harmful effects of unequal bargaining power" that the text of FLSA seeks to prevent. *O'Connor*, 308 F.3d at 1243.

### E. Even if FLSA Claims Could be Settled Privately, They Must Involve a Bargained-For Exchange.

Even if Lomibao could simply waive his FLSA rights, a settlement of FLSA claims must still resolve a bona fide dispute. *Brooklyn Sav. Bank*, 324 U.S. at 703. In evaluating whether a plaintiff can waive his rights to recover liquidated damages under the FLSA, the Supreme Court held "[a] preliminary question arises as to whether respondent's release was given in settlement of a bona fide dispute between the parties with respect to coverage or amount due under the Act or whether it constituted a mere waiver of his right to liquidated damages." *Id.* The Court determined a release was not valid when, "[w]ith the exception of the recital in the release, there is nothing in the record which shows that the respondent's release was obtained as the result of the settlement of a bona fide dispute between the parties with respect to coverage or amount[.]" *Id.* at 704. And in the absence of a bona fide dispute, a purported "waiver or release" of FLSA rights did not bar a subsequent action to recover damages.

"A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) (cleaned up). Although the Ninth Circuit has not defined what constitutes a bona fide dispute, the weight of authority holds that at minimum, employees must have counsel for private settlement of FLSA claims to be enforceable. *See Seminiano*, 602 F. App'x at 683 (citing with approval *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1352–54 (11th Cir.1982) ("[T]o approve an

'agreement' between an employer and employees outside of the adversarial context of a lawsuit brought by the employees would be in clear derogation of the letter and spirit of the FLSA.")); *see also Martinez v. Back Bone Bullies Ltd*, No. 21-CV-01245-MEH, 2022 WL 782782, at *13 (D. Colo. Mar. 15, 2022) (collecting cases and concluding "the Court cannot go against the weight of authority that a bona fide dispute does not exist if the employee is unrepresented when agreeing to settle an FLSA claim").

Unsurprisingly, there must also be evidence that liability is actually disputed. *Trammell v. Aditi Consulting LLC*, No. 2:25-CV-00243-RSL, 2025 WL 2917540, at *3 (W.D. Wash. Oct. 14, 2025) (defendant's refusal to concede liability was insufficient to suggest its position had merit or that the dispute was bona fide). If there is no legitimate question regarding the employee's right to compensation under the FLSA, no settlement is permissible because doing so would allow the employer to avoid the full cost of complying with the statute. *Id.* In the absence of a bona fide dispute, settlements amount to no more than "mere waiver" or compromise of FLSA rights that is clearly prohibited. *Id.* (citing *Abrego v. Yu Lin, Corp.*, 317 F. Supp.3d 298, 303 (D.D.C. 2018)).

As noted above, even under Fifth Circuit precedent, a plaintiffs' FLSA claims are not barred by a release unless there is evidence of a bona fide dispute. There, an employer sued its employees in state court for violating a non-compete. *Bodle*, 788 F.3d at 161-62. The parties resolved that matter by entering into a settlement agreement that containing a general release. *Id.* at 162. After the settlement was finalized, the employees sued their employer in federal court for failing to pay overtime under the FLSA. *Id.* at

161. The district court granted summary judgment, finding the state court settlement was binding and that the plaintiffs were barred from asserting FLSA claims. *Id.* at 162.

The Fifth Circuit reversed, reaffirming the "general rule" prohibiting waiver of FLSA claims. *Id.* at 164 (citing *Brooklyn Savings*, 324 U.S. at 706-708). It discussed the limited exception to the rule created by *Martin* for unsupervised settlements reached in resolving a bona fide dispute over hours worked or compensation owed. *Id.* at 165 (citing *Spring Break '83*, 688 F.3d at 255 (explaining settlements reached due to a bona fide dispute do not undermine the purpose of the FLSA because plaintiffs do not "waive their claims" through a bargain but instead receive compensation for the disputed hours)). The Fifth Circuit rejected the argument that because the "state court settlement resolved a bona fide dispute about hours worked and compensation due in a general sense, the release of a claim for unpaid overtime is valid, even if brought under the FLSA." *Id.* at 164.

Instead, the Court of Appeals "the absence of any mention or factual development of any claim of unpaid overtime compensation in the state court settlement negotiations precludes a finding that the release resulted from a bona fide dispute[.]" *Id.* at 165. Under those circumstances where overtime pay was not specifically negotiated as part of the parties' settlement, "[t]o deem the plaintiffs as having fairly bargained away unmentioned overtime pay … would subvert the purpose of the FLSA." *Id.*

*Hernandez v. Stringer*, 210 F. Supp. 3d 54 (D.D.C. 2016) involved similar facts. In *Stringer*, the plaintiff was given an Employment Separation and Release Agreement which contained a provision releasing *all* claims against his employer, including under the FLSA, in exchange for two days' pay. *Id.* at 57–58. Three months later, the employee sued and the employer filed a counterclaim for breaching the agreement. *Id.* at 58. The employee moved for summary judgment on the counterclaim, arguing the agreement was invalid. *Id.* at 61. The court granted the motion, noting the lack of evidence of any communications regarding the FLSA's overtime requirements or the number of hours worked but unpaid. *Id.* at 62 ("Defendants do not even argue, much less provide evidence, that at the time the parties executed the Agreement they were settling a dispute between them regarding wages owed to plaintiff under the FLSA."). Instead, it was uncontroverted that the agreement was a "standard separation agreement" issued after the plaintiff was terminated. *Id.*

Further, even though the employer paid the employee in exchange for executing the agreement, there was "no evidence that the payment derived from negotiations between the parties as to the amount actually owed to plaintiff under the FLSA[.]" *Id.* Because the agreement "was [not] given in settlement of a bona fide dispute between the parties with respect to coverage or amount due under the" FLSA, the court found it did not serve as a bar to the employee's claim. *Id.*

A similar dispute arose in *Melendez v. Rockaway Maint. Partners Corp.*, No. 22-CV-10679 (LJL), 2023 WL 8113382 (S.D.N.Y. Nov. 22, 2023). There, the plaintiff

demanded unpaid wages from his former employer. *Id.* at *1. The employer agreed and sent over an agreement purporting to govern the terms of the plaintiff's separation of employment, severance payment, and unpaid wages under state and federal law. *Id.* The agreement provided for a "settlement" payment of $7,500 in exchange for a release of claims, "including, any and all wage and hour claims arising under the Fair Labor Standards Act[.]" *Id.* at *2. A year after signing the agreement, the employee sued under the FLSA and New York Labor Law ("NYLL"). *Id.* at *1. The employer moved for summary judgment (unopposed) based on the parties' agreement and the court considered whether the agreement constituted a settlement of a bona fide dispute or a mere waiver of statutory rights. *Id.* at *2, 4.

The court noted "[a]t the most basic level," a bona fide dispute requires "a dispute between the employer and employee over issues such as the number of hours worked or the regular rate of pay." *Id.* at *4. On the other hand, where there is no evidence that the employer disputed "the actual damages to which the employee is entitled under the FLSA, there is no bona fide dispute for a settlement agreement to resolve." *Id.* (citing *Tortomas v. Pall Corp.*, No. 18CV5098JMASIL, 2020 WL 2933669, at *5 (E.D.N.Y. May 31, 2020)). And where an employee is paid only a nominal amount for an agreement that includes a waiver of rights, it suggests that the agreement is a severance agreement, not settlement of a bona fide dispute. *Id.* (citing *Young Min Lee v. New Kang Suh Inc.*, No. 17-CV-9502 (NSR), 2020 WL 5504309, at *6 (S.D.N.Y. Sept. 11, 2020)) (denying summary judgment based on a release when the plaintiff "was

entirely unaware of her rights under the FLSA when she signed the Settlement Agreement ... [, and] understood the payment to be a severance payment made due to her recent termination").

The court denied summary judgment, finding the defendants failed to prove as a matter of law the release was made as a compromise of a bona fide dispute. *Id.* at *5. For example, defendants failed to establish there was a bona fide dispute over the plaintiff's hours or pay. *Id.* Further, it provided no evidence that the $7,500 severance payment was a "compromise or settlement" of the pay to which plaintiff was entitled. *Id.* Given the lack of evidence of a bargained-for exchange, the court denied summary judgment and allowed the plaintiff's FLSA claims to proceed. *Id.* at *6.

Here, the lower court found Lomibao "present[ed] compelling evidence that there was no 'active dispute' regarding [his] overtime hours or compensation" at the time the severance agreement was executed. ER-42. Nonetheless, it concluded there was a bona fide dispute at the time the severance agreement was executed. ER-41. The court based its conclusion on Lomibao's off the clock allegations and the severance agreement's terms verifying "Employee has been paid in full and received all compensation and benefits Employee earned by virtue of employment with Employer[.]" *Id.* But an employer cannot hide behind such conclusory statements to avoid the FLSA's requirements. *Goldberg v. Cockrell*, 303 F.2d 811, 812 (5th Cir. 1962) (employer found to have violated the FLSA even though its "employees signed their time sheets and turned them in each week" and stated "'I hereby certify that I have

entered above the correct time worked and have received full payment as shown. I am due no back pay.'"). Nonetheless, because there was "no indication in the record that [ACG] conceded that overtime wages were owed" the court found a bona fide dispute existed under the FLSA. ER-41–42.

But a confession is not required. *Trammell*, 2025 WL 2917540, at *3 (defendant's refusal to concede liability was insufficient to suggest its position had merit or that the dispute was bona fide). Even if it was, the lower court erred in granting summary judgment. Like in *Melendez*, there is no evidence that AGC and Lomibao's Agreement was the settlement of a bona fide dispute under the FLSA as opposed to a formulaic severance agreement. The record reflects no evidence that Lomibao's severance payment was "a compromise or settlement" of the pay to which he claims he is entitled. *Melendez*, 2023 WL 8113382, at *5. ACG did not offer any evidence regarding how Lomibao's $7,140 severance payment was calculated, nor how many hours of work it was purportedly based upon. Based on the dearth of evidence offered by AGC, "it equally probable that [AGC] paid [Lomibao] in full in exchange for a release that would relieve [AGC] of the requirement to pay liquidated damages." *Id.*

AGC offered nothing in the record showing the severance payment was reached based upon disputed hours worked or wages owed. AGC's declaration says: "Plaintiff's employment with AGC was terminated as part of a reduction in force. In connection with his separation, AGC offered Plaintiff a severance payment as part of a Separation Agreement and Release." ER-103 at ¶¶ 4–5. The Agreement itself does not refer to any

ongoing dispute but instead refers to the severance payment solely in relation to the end of Lomibao's employment. ER-109 at ¶¶ A–C. Further, there is no evidence that AGC paid Lomibao additional compensation to settle his FLSA claims, or that he received any money he wouldn't have normally received as part of a severance agreement. ER-109–121. Even the after the fact declaration AGC attempted to smuggle into the mix claims only that "AGC was *open to* negotiating the terms" of the severance agreement—not that any negotiations actually occurred or that they were intended to settle Lomibao's FLSA claims. ER-55 at ¶ 5 (emphasis added).

On the other hand, Lomibao provided evidence that he "did not have any active dispute with AGC regarding wages" when he was presented with the severance agreement. ER-102 at ¶ 3. He demonstrated "no one at AGC reached out to [him]" regarding any concerns he may have had while employed by AGC. *Id.* And despite AGC's (unsupported) claim the severance agreement was made to resolve Lomibao's FLSA claims, Lomibao provided evidence the severance payment was based "solely on the number of years [he] was employed" and "was not connected to any dispute between [himself] and AGC." ER-103 at ¶ 4. Further, he offered evidence that the severance payment was not negotiated to resolve his FLSA claims. In fact, Lomibao offered proof it was not negotiated at all. ER-103 at ¶ 5. Instead, he understood the severance payment was "non-negotiable" and "based on the number of years" he had been employed by AGC. *Id.* To his knowledge, AGC's severance agreements were not individualized as to any of its terminated employees. *Id.*

In sum, nothing in the Separation Agreement or the record suggests that the agreement was any more than a formulaic agreement AGC offered to its terminated employees. ER-109–121. Given the lack of any evidence that the severance payment was made as a settlement of Lomibao's FLSA claims, the lower court erred in granting summary judgment. *Melendez*, 2023 WL 8113382, at *5–6; *see also, Bodle*, 788 F.3d at 165.

**2. Washington Public Policy Favors Employees, Not Employers.**

Next, the district court erred in determining Appellant waived his WMWA rights via private agreement.

"Washington State has a 'long and proud history of being a pioneer in the protection of employee rights.'" *Pellino v. Brink's Inc.,* 164 Wash. App. 668, 684 (2011) (quoting *Drinkwitz v. Alliant Techsystems, Inc.*, 140 Wash. 2d 291, 300 (2000)). To that end, "[t]he Legislature has evidenced a strong policy in favor of payment of wages due employees by enacting a comprehensive scheme to ensure payment of wages." *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 157, 961 P.2d 371 (1998). For that reason, "[r]emedial statutes protecting employee rights must be liberally construed." *Id.* (quoting *Internat'l Ass'n of Fire Fighters, Local 46 v. City of Everett,* 146 Wash.2d 29, 35 (2002)). Importantly, "liberal construction requires that the coverage of [a wage] statute's provisions 'be liberally construed [in favor of the employee] and that its exceptions be narrowly confined.'" *Id.* at 685 (quoting *Peninsula Sch. Dist. No. 401 v. Pub. Sch. Employees,* 130 Wash.2d 401, 407 (1996)). Indeed, the Washington Supreme Court has instructed exemptions apply "only to situations that are plainly and unmistakably

consistent with the terms and spirit of the legislation." *Rocha v. King Cnty.*, 195 Wash. 2d 412, 421 (2020) (citing *Drinkwitz*, 140 Wash.2d at 301).

The Washington Minimum Wage Act (WMWA) was enacted to protect the health and safety of Washington workers. *See Martinez-Cuevas v. DeRuyter Bros. Dairy, Inc.*, 196 Wash. 2d 506, 525, 475 P.3d 164, 174 (2020); *see also* RCW 49.46.005(1). This purpose underlies the entirety of the act, including its overtime protections and exemptions. *Id.* The WMWA requires employees to be compensated at one and a half times their regular rate of pay for hours worked over 40 in a workweek. RCW 49.46.130.

Like the FLSA, the WMWA prohibits waiver of overtime. *Khadera v. ABM Indus. Inc.*, No. C08-0417 RSM, 2012 WL 581402, at *3 (W.D. Wash. Feb. 21, 2012) ("employees may not waive their rights under Washington's wage and hour laws or the FLSA"). The WMWA's anti-waiver provision is codified at RCW 49.46.090(1), which states that any employer who pays any employee less than what they are due under the chapter shall be liable, and "**any agreement** between such employee and the employer allowing the employee to receive less than what is due under this chapter shall be **no defense** to such action." RCW 46.49.090(1) (emphasis added). Its language is unequivocal: "[t]he MWA's provisions clearly show that the legislature did not intend for the provisions of the MWA to be bargained away." *McClain v. State*, 34 Wash. App. 2d 247 (2025) (citing RCW 49.46.090; RCW 49.46.110). "And multiple decisions from courts have used language that is consistent with this—explaining MWA rights "cannot

be waived" and are "nonnegotiable."" *Id.* (citing *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wash.2d 853, 864 (2004)).

Where, like here, a private agreement attempts to limit an employee's protections under the WMWA, it is void as against public policy. *See Johnson v. Silver Shores MHP, LLC*, 20 Wash. App. 2d 1004 (2021). In *Johnson*, an employee brought a WMWA claim for unpaid wages and retaliatory discharge after he was terminated. *Id.* at *1. The trial court dismissed his claims on summary judgment, finding the one-year statute of limitations in his written employment agreement precluded his claims. *Id.* at *1-2. The employee appealed. *Id.* at *2. The Court of Appeals determined the trial court erred in granting summary judgment based on the one-year statute of limitations in his employment agreement. *Id.* at *5. The court noted the strong public policy in favor of employees and the liberal reading of statutes that protect them. *Id.* at *6. Moreover, the court recognized that statutory rights under the WMWA are nonnegotiable and may not be reduced via agreement. *Id.* Because the employment agreement provided for a shorter limitations period than what is allowed under the WMWA, enforcing it would "decrease an employee's ability to enforce the wage provision of the MWA" and "contravene[ ] the legislative intent demonstrated by the strongly protective measures of the MWA." *Id.* Thus, the court held that the provision was "void as against public policy to the extent it purports to cut off claims under the MWA and claims for retaliatory discharge for asserting rights under the MWA." *Id.* at *5.

**3. To the Extent the Court Determines Washington Law is Unclear, It Should Certify a Question to the Washington Supreme Court.**

Washington law authorizes the state supreme court to accept certified questions from the federal courts. Wash. Rev. Code § 2.60.020. The Ninth Circuit may certify a question to a state's highest court "to obtain authoritative answers" when state law issues are unclear. *Montes v. Sparc Grp., LLC*, 136 F.4th 1168, 1171 (9th Cir. 2025), certified question answered, 586 P.3d 999 (2026) (quoting *Toner ex rel. Toner v. Lederle Lab'ys, Div. of Am. Cyanamid Co.*, 779 F.2d 1429, 1432 (9th Cir. 1986), amended by 831 F.2d 180 (9th Cir. 1987)). Certification may be especially necessary when a panel faces "complex" state law issues carrying "significant policy implications." *McKown v. Simon Prop. Grp. Inc.*, 689 F.3d 1086, 1091 (9th Cir. 2012), certified question answered, 182 Wash. 2d 752, 344 P.3d 661 (2015) (citing *Perez–Farias v. Global Horizons, Inc.*, 668 F.3d 588, 593 (9th Cir.2011)).

Although requests for certification are disfavored on appeal, *Thompson v. Paul*, 547 F.3d 1055, 1065 (9th Cir.2008), they may be granted where "compelling reasons" make certification appropriate. *See McLinn v. F/V Fjord,* 744 F.2d 677, 681 (9th Cir.1984); *see also Broad v. Mannesmann Anlagenbau AG*, 196 F.3d 1075, 1077 (9th Cir. 1999), certified question answered sub nom. *Broad v. Mannesmann Anlagenbau, A.G.*, 141 Wash. 2d 670, 10 P.3d 371 (2000), opinion after certified question answered sub nom. *Broad v. Mannesmann Anlagenbau AG*, 10 F. App'x 543 (9th Cir. 2001) (granting request

for certification of issue to Washington Supreme Court, even though request was made for the first time on appeal).

Here, compelling reasons exist which make certification appropriate. Although the Washington Supreme Court has consistently reinforced the public policy favoring employees, it has not opined on whether state law categorically prohibits waiver of rights under the WMWA. This question carries significant policy implications for workers and employers throughout the state, and its resolution is dispositive of Appellant's state law claims. Appellant is confident in his assertion that the WMWA's plain language, in conjunction with Washington's strong public policy in favor of employees, prohibits private waiver of rights under the WMWA. However, to the extent the Court finds Washington law unclear, the Court should certify the following question to the Washington Supreme Court: Can an employee waive his rights under the WMWA via private agreement?

**4. Because Appellant Did Not Waive His Rights Under the FLSA or WMWA, His Class and Collective Claims Should be Reinstated.**

Finally, the trial court erred in dismissing Appellant's class and collective claims. ER-52–53. In its summary judgment order, the court determined that Appellant waived all his claims and therefore lacked standing to bring those claims on behalf of a class or collective. *Id.* However, as discussed *supra*, Appellant did not (in fact, could not) waive his claims under state or federal law. Because Appellant maintains his claims under the FLSA and Washington law, he has standing to represent the members of his proposed

classes. Because Appellant did not waive his claims, his representative claims should be reinstated.

## CONCLUSION

For the foregoing reasons, this Court should reverse the grant of summary judgment and remand this case for further proceedings.

Dated: June 26, 2026

BRUCKNER BURCH PLLC

By: */s/ Richard J. Burch*
Attorney for Appellants

## STATEMENT OF RELATED CASES

Appellant is aware of no related cases pending before this court.

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I, Richard J. Burch, state that I am one of the appellate attorneys of record for Appellant Eufronio Lomibao in this matter. This brief contains 9799 words, excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6). I certify that this brief complies with the word limit of Cir. R. 32-1.

Dated this 26th day of June, 2026.

*/s/ Richard J. Burch*
Attorney for Appellants

## CERTIFICATE OF SERVICE

I hereby certify that pursuant to Circuit Rule 25-5(f) a true and correct copy of the foregoing document was electronically served via the Appellate ECF system to the following person:

Callie A. Castillo
Erin Wilson
Jeffrey Odom
Ian T. Maher
BALLARD SPAHR, LLP
1301 2nd Avenue, Ste. 2800
Seattle, WA 98101

Dated: June 26, 2026

*/s/ Richard J. Burch*
Richard J. Burch